# Staunton.

## Russell Miller v. Commonwealth.

September 19, 1929.

Absent, West, J.

The opinion states the case.

*C. C. Burns, L. E. Fuller* and *A. T. Griffith,* for the plaintiff in error.

*John R. Saunders, Attorney-General,* and *Leon M. Bazile* and *Edwin H. Gibson, Assistant Attorneys-General,* for the Commonwealth.

PRENTIS, C. J., delivered the opinion of the court.

The accused, Russell Miller, has been convicted

of seduction under promise of marriage, under Code 1919, section 4410. The parties were both young, the woman about nineteen years of age, and the accused somewhat younger at the time of the alleged seduction. The evidence of the prosecutrix is clear, unequivocal and corroborated. It meets every requirement of the statute to sustain the conviction. They had grown up together; he visited her frequently; he paid her the usual public attention; and he wrote her many affectionate letters before the occurrence.

There is a presumption of law that she was of previous chaste character, but she supplemented this presumption by evidence given by her teachers, neighbors and associates that she had the highest reputation for worthiness, chastity and truth.

The accused did not testify, nor deny any of the incriminating testimony produced against him, but as his sole defense undertook to show that the prosecutrix was not a woman of previous chaste character. He introduced three witnesses, one a young girl about ten years of age, who testified that she saw her, in the spring preceding the seduction charged, in a compromising position with a man in the woods, though in plain view of dwelling houses a short distance away. Two other witnesses testified that they had sexual intercourse with the prosecutrix before the time of the alleged seduction. These two had made affidavits in support of the motion of the accused for a new trial when he had previously been found guilty of the offense charged. Their testimony is upon its face quite incredible, but whether true or not, it was doubtless sufficient to support a verdict in favor of the accused had the jury believed it. Their verdict upon the second trial, of course, shows that they did not believe it. So that, unless the court committed some harmful error

of law during the course of the trial, the judgment should be affirmed, and this conclusion disposes of the assignment of error that the verdict is contrary to the law and the evidence.

There are four other assignments of error.

1. The first assignment is that the trial court refused to permit the attorney for the accused to cross-examine certain witnesses offered by the Commonwealth. These witnesses were Leo Honaker and Everett Honaker. They had testified in chief, in substance, that "before Christmas" and in January, 1927, before the warrant against him had been sworn out, the alleged seduction having occurred about the middle of the preceding September, the accused told them separately that he had previously had sexual intercourse with the prosecutrix. They did not remember the place where the conversations took place, except that it was in Honaker, and no one else was present at the time. They both testified that at the time of this communication they had never heard anything against the prosecutrix's character, and that at that time she was chaste so far as they knew. Upon cross-examination the accused sought to prove by these witnesses that after that time, which was, of course, long after the alleged seduction, each of them had sexual intercourse with the prosecutrix. His attorneys were not permitted thus to extend the cross-examination, though the same witnesses were thereafter introduced by the accused as his own witnesses.

While the liberties of a cross-examiner are large, and much must be left to the discretion of the trial judge, the general rule is that cross-examination is limited to matters elicited on examination in chief. *Duncan* v. *Carson*, 127 Va. 318, 103 S. E. 665, 668, 105 S. E. 62; in which it is said: "Under what is

termed the American rule, which prevails in this State, the cross-examination of witnesses is limited to matters brought out on the examination in chief. *Wills* v. *Russell*, 100 U. S. 621, 625, 25 L. Ed. 607; *Miller* v. *Miller*, 92 Va. 510, 516, 23 S. E. 891; Jones on Ev., section 820."

The rule is thus stated in *Insurance Co.* v. *Power Co.*, 81 W. Va. 304, 94 S. E. 372, 374: "It is a matter addressed to the sound discretion of the trial court whether or not a witness on cross-examination will be permitted to answer questions touching a subject-matter upon which he was not examined in chief. The refusal of the trial court to permit such answers on cross-examination will not sustain an assignment of error for the very good reason, if for no other, that it is within the power of the defendant to introduce the witness himself and ask him the questions, if they are pertinent to the matters involved in the suit. *State* v. *Carr*, 65 W. Va. 81, 63 S. E. 766."

█ The testimony was also inadmissible when subsequently offered for the accused. The reason is well indicated by this expression in *State* v. *Abegglan*, 103 Ia. 52, 72 N. W. 305: "If she was guilty of improper conduct after that time, that fact would not tend to show him to be innocent of the offense charged, for it might be one of the results of the ruin he had wrought."

In a note to *Rex* v. *Moon* (1910, 1 K. B. 818), 19 Ann. Cas. 447, this is said: "The fact that the prosecutrix has had sexual intercourse with other men since the date of the alleged seduction is not important, as the real inquiry is as to the chastity of the prosecutrix at the time of the alleged criminal act and not at a subsequent period. *Bracken* v. *State*, 111 Ala. 68, 20 So. 636, 56 Am. St. Rep. 23; *People* v. *Wade*, 118 Cal.

672, 50 Pac. 841; *People* v. *Kehoe*, 123 Cal. 224, 59 Pac. 911, 69 Am. St. Rep. 52; *State* v. *Wells*, 48 Ia. 671; *State* v. *Deitrick*, 51 Ia. 467, 1 N. W. 732; *Commonwealth* v. *Hodgkins*, 111 Ky. 584; 64 S. W. 414; *Anderson* v. *State*, 39 Tex. Crim. R. 83, 45 S. W. 15.

In *Boyce* v. *People*, 55 N. Y. 646, the accused offered proof that after the alleged seduction the prosecutrix had illicit intercourse with another. This evidence was excluded, and the New York Court of Appeals held that its exclusion was proper.

In *People* v. *Brewer*, 27 Mich. 135, the trial court had refused to allow the accused to show the reputation of the prosecutix for morality and virtue at the time of the trial, and the point was thus disposed of by Cooley, J.: "Questions were put to several witnesses for the avowed purpose of drawing out such evidence, but in every instance the time inquired about was the time of the trial. It does not, therefore, become necessary for us to consider whether the woman's reputation at the time or previous to the alleged offense could be proved or not, as it is manifest that her reputation in that regard would be injuriously affected by the offense itself when made known, so that if the bad reputation could be made use of by the defense, the very crime would become the means of protecting the criminal, and the more notorious the seduction the more certain would be the immunity from punishment."

■ 2. The second assignment of error is based upon the refusal of the trial court to permit two witnesses to testify that prior to the seduction of the prosecutrix they had seen a man with his hand under her skirt above her knee.

*Mills* v. *Commonwealth*, 93 Va. 819, 22 S. E. 863, 864, seems to answer this assignment of error, and to show that it does not constitute any ground for re-

■

versal: "It was earnestly contended on behalf of the plaintiff in error that the statute, in the phrase used, 'any unmarried female of previous chaste character,' intends something more than a woman who has preserved her chastity and kept her person from actual defilement. There are women in whose presence every evil thought stands abashed. They are guarded by their innocence and purity and need no other protection. They stand invulnerable in their own virtue. There are others whose dispositions are more easy and complaisant, but who would have perhaps escaped irretrievable ruin had not their confidence been secured, and their apprehensions put at rest, by a promise of marriage. To shield and save them from the arts of the seducer was the object of the law. It would be but a mockery to extend its protecting care only to those who have no need of its assistance. It should be here and ever the refuge and support of those who most need its protection."

This from *People* v. *Kehoe*, 123 Cal. 230, 55 Pac. 911, 912, 69 Am. St. Rep. 52, is a repetition of the same thought: "It is conceivable that a woman may permit or suffer many things which would be regarded as improprieties, and yet hold firmly to her virtue. As is happily said in *State* v. *Brinkhaus*, 34 Minn. 285, 25 N. W. 642: 'Although a female may, from ignorance or other causes, have so low a standard of propriety as to commit or permit indelicate acts or familiarities, yet, if she have enough sense of virtue that she would not surrender her person unless seduced to do so under promise of marriage, she could not be said to be an unchaste woman, within the meaning of the statute.'"

On this point, as in many other instances, much must be left to the discretion of the trial judge. It is, as it appears to us, always safer to admit than to

reject evidence which can in any way aid the jury in the ascertainment of the truth; but this evidence falls short of showing the actual personal defilement of the prosecutrix by any man, and therefore, under the circumstances shown in this case, its exclusion does not constitute reversible error.

3. The third assignment of error is the insistence that the trial court committed error in excluding certain questions and answers by which it was sought to prove that subsequent to the seduction of the prosecutrix by the accused she had intercourse with Leo Honaker and Everett Honaker. This assignment has already been disposed of by what we have said as to the first. The overwhelming weight of authority sustains this ruling of the trial court.

4. The fourth assignment of error is based upon a remark of the attorney for the Commonwealth, in his argument before the jury. The Commonwealth had proved by the testimony of Leo Honaker and Everett Honaker that some time after September, the accused had told them that he had previously had intercourse with the prosecutrix. The accused did not testify. Had he testified he would probably have corroborated them because his sole defense is that the prosecutrix was an unchaste woman. During the argument, the prosecuting attorney, in referring to the testimony of these two witnesses, said: "No witness has gone upon that stand to deny the statements made to Leo Honaker and Everett Honaker that the defendant had had intercourse with Hattie Lee Honaker." Objection was made by counsel for the accused, but the court held that the Commonwealth's attorney was within his rights.

The assignment is based upon Code 1919, section 4778, which is the section which permits one who is accused of crime to waive his privilege of standing mute

and allows him to testify as a witness in his own behalf. The section concludes with this language: "But his failure to testify shall create no presumption against him, nor be the subject of any comment before the court or jury by the prosecuting attorney."

Similar questions have been frequently considered by the courts, and there is a collection of cases referring thereto in Third Decennial Digest, Vol. 8, pages 1351 *et seq.* There are slight differences between the statutes and some slight confusion in the authorities, but it is perfectly apparent that, in the main, the precedents support the ruling of the trial court.

For instance, in *People* v. *Donahoe*, 198 Ill. App. 1, affirmed 279 Ill. 411, 117 N. E. 105, it is held that the State's attorney in a criminal case may properly comment on the fact that the testimony of witnesses for the prosecution has not been contradicted, even though the defendant alone was in a position to contradict or dispute such testimony.

In *People* v. *Clement*, 285 Ill. 614, 121 N. E. 213, it is held that where defendants did not offer evidence and submitted the case without contradicting the State's evidence, the prosecutor's statement, during argument, that there was not one scintilla of evidence to contradict the State's case was not an unwarranted reference to defendant's failure to testify.

In *People* v. *Sutherland*, 59 Cal. App. 462, 210 Pac. 965, it is held that the assertion of a district attorney in argument to the jury that not a witness had taken the stand on either side to dispute the testimony of a certain officer, was not violative of the statute as pointing to the jury's attention the fact that the accused had not testified in his own behalf.

Citations similar in effect to these could be multiplied. The question has come before this court in

only two cases. The first is *Sutton ·v. Commonwealth*,
85 Va. 128, 7 S. E. 323. There the prosecuting attorney
said to the jury that the accused had not accounted
for his whereabouts at the time of the homicide, nor
for his flight from the State, but made no specific
allusion to his failure to testify. This court held that
the language did not call the attention of the jury to
the fact that the accused had failed to testify, and
therefore was not violative of this statute.

In *Sawyers v. Commonwealth*, 88 Va. 357, 13 S. E.
708, the court held that the remark of the attorney for
the Commonwealth that "though he had no right to
swear any man accused of crime, he had the right to
prove his statements," was not violative of the statute,
in this connection saying this: "There was certainly
no direct reference in the remark to the failure of the
accused to testify, and it would be a strained and un-
warranted construction to hold it to be an indirect or
implied comment on that subject. The objection is,
therefore, not well taken."

 ██ This clause of the statute has often been
criticised as unwise, illogical and tending to impede
rather than to promote the discovery of the truth.
It may be invalid as a legislative invasion of judicial
power, but in this case it is unnecessary to question
its validity. Assuming its validity and construing it,
certainly it does not mean that because a prosecutor
may not comment upon the failure of the accused to
testify, therefore he cannot allude to, rely upon and
comment upon the evidence of the witnesses who have
actually testified. It may be helpful to consider the
main purpose of the statute. This clearly was merely
to extend to the accused the privilege of testifying,
which theretofore had been denied. It was certainly
not intended primarily to curtail any previously exist-

ing right of the prosecutor to comment upon the testimony of any other witness who had testified.

Let us analyze the remark of the Commonwealth's attorney and endeavor to discover whether it should be held to be a proper reference to the testimony of Leo Honaker and Everett Honaker, or whether it should have been condemned as improper comment in fact upon the failure of the accused to testify. Is it any more, in substance, than urging the jury not to disbelieve these witnesses, and adding as a reason for believing them, that they had not been contradicted? This, as it seems to us, was the substance of the remark objected to, and inasmuch as the remark was true, *i. e.*, that their testimony had not been contradicted, there can be no valid exception to it. If the statute should be construed as we are asked to construe it, and we were to hold that such a remark of a prosecuting attorney, directing attention to certain testimony in the case, must be restrained merely because in the particular case only the accused. could have contradicted it, the result would be to make silence, the usual refuge of the guilty, still more secure. The meaning of the statute, and its meaning should not be in the least extended, is that the prosecutor can no more comment now than he could before the statute on the failure of the accused to testify. Before the statute the accused could not testify. It is now his privilege to testify, but it is his right to stand mute. His liberty of choice must be fully accorded him, and cannot be made the subject of comment; but the restraint of the statute cannot be extended so as to prevent proper comment and emphasis upon the testimony of other witnesses simply because it could only be contradicted by the accused and he stands mute. Though the silence of the accused may not be the basis of an argu-

ment for or support his conviction, his silence neither weakens nor minimizes the significance of testimony tending to show his guilt, nor does it restrain comment upon such other testimony.

Our conclusion, then, is that the prosecuting attorney did not exceed his privilege.

It follows that we are of opinion to affirm the judgment.

*Affirmed.*