# Wytheville

JAMES BLAIR v. COMMONWEALTH OF VIRGINIA.

June 11, 1936.

Present, Holt, Hudgins, Gregory, Chinn and Eggleston, JJ.

The opinion states the case.

*W. W. Venable,* for the plaintiff in error.

*Abram P. Staples, Attorney-General,* and *Joseph L. Kelly, Jr., Special Assistant,* for the Commonwealth.

GREGORY, J., delivered the opinion of the court.

The accused was indicted, tried and convicted by a jury of an attempted rape and his punishment fixed at life imprisonment. The court pronounced judgment upon the verdict.

The scene of the attack in this case is at a point on Brambleton avenue in the city of Norfolk. At this point there is a vacant lot or field extending about three hundred feet on said avenue and running back several hundred feet. This lot was considerably grown over with high weeds. The attack occurred on a December evening

at approximately eight o'clock. On the opposite side of the street was a drug store and just a short distance beyond was a filling station. Another filling station was down near the street intersection. There were other buildings on the same block and on the same side of the street upon which the attack occurred.

Lucille Speight, a white girl, sixteen years of age, was passing along Brambleton avenue at the edge of the vacant lot when she was seized from behind by the accused. He seized her by the throat and threw her to the ground at the edge of the sidewalk. Approximately one minute after the attack had begun, according to her testimony, an officer approached them and as he approached he asked, "What is going on out there?" to which question the accused stated, "You know what she did to me?" to which the officer said, "I do not care what she did, get up." The accused then got up and ran west on Brambleton avenue and was pursued by the officer and when he failed to stop upon being requested to do so, the officer shot at him but he escaped. Several hours later he was found in bed in a rooming house, and, according to the testimony of the officer who found him, he was abnormal and appeared to be under the influence of some narcotic. He could not talk coherently.

The Attorney-General in his brief concedes that at the time of the offense the defendant was intoxicated from the voluntary use of a kind of cigarette which is calculated to make one "high."

The prosecutrix was returning to her home when she was attacked, she having been to a store where she purchased some eggs. She testified that the accused did not strike her; that he did not attempt to pull up her dress, nor to put his hands upon her limbs or on any other part or parts of her body other than her neck. She further testified that he made no indecent proposals or advances to her and that the only thing he did was to choke her.

After the case had been argued on the part of the Commonwealth and the defendant, both sides having rested

and the court having fully instructed the jury, but before the case had been actually submitted to the jury, one of the jurors asked the court "if the jury could have the benefit of the defendant's testimony." Counsel for the accused then offered him as a witness and he was subjected to cross-examination. He testified that sometime prior to the evening of the attack, he had received from a friend, who worked on a New York boat, some brown looking substance that resembled tobacco and he was told by his friend that it would make him "high" or put him to sleep. He further testified that just before the attack he had used some of this substance and lost consciousness and that he did not remember anything about the occurrence; that he did not regain consciousness until the following morning in the hospital.

■ Article V of the Amendments to the Constitution of the United States and section 8 of article 1 of the Constitution of Virginia, provide that one accused of crime shall not be compelled in any criminal proceeding to give evidence against himself, and section 4778 of the Code of Virginia, in part, provides, "that in any case of felony * * * the accused may be sworn and examined in his own behalf * * * but his failure to testify shall create no presumption against him nor be the subject of any comment before the court or jury by the prosecuting attorney."

The object of the statute is to afford the accused an opportunity to testify in his own behalf if he so desires. It is not intended to deprive him of his right to deny his guilt and remain silent. The statute extends to him a privilege which had been theretofore denied. Under it the accused may exercise his privilege and testify or he may stand mute. His liberty of choice must be fully accorded him and must not be the subject of comment. *Price* v. *Commonwealth,* 77 Va. 393; *Miller* v. *Commonwealth,* 153 Va. 890, 149 S. E. 459, 68 A. L. R. 1102.

■ As we have seen after his plea of not guilty the accused had exercised his choice and had remained silent

throughout the trial. The introduction of evidence had been completed. The court h'ad instructed the jury and the attorneys had completed their respective arguments and the case was ready for submission to the jury for its verdict but before the jury had actually retired to consider its verdict, one of the jurors asked the court "if, the jury could have the benefit of the defendant's testimony." Under these circumstances and without apprising the accused of his fundamental rights and without informing the jury that the accused could stand mute if he desired and such could not create any presumption against him nor be the subject of any comment before the court or jury, the court and the attorneys permitted the accused to take the stand and testify.

The Attorney-General does not rely upon the failure of the accused to comply with Rule 22. He, expressly waived any reliance upon the rule at the bar of this court. Nor does he make any point of the failure of the accused to assign as error the fact that he took the stand under the circumstances narrated. He contends, however, that the accused, by taking the stand waived his right granted him by the statute (section 4778). This contention would be absolutely sound if it could be said that the accused *voluntarily* took the stand and testified. But from the statement of the events of the trial it is quite obvious that the accused never intended to waive his statutory right. In the early case of *Cullen* v. *Commonwealth,* 65 Va. (24 Gratt.) 624, the court held that as a general rule a witness should be warned of his privilege before he can be held to have waived it by testifying.

The failure of an accused to testify shall not be the subject of comment. The facts here disclose a case that is quite similar to one where the court or the Commonwealth's Attorney call upon an accused to testify after he has indicated that he elected not to testify. If this should occur it would certainly constitute prejudicial error. Is it less prejudicial for a juror to call upon an accused to testify after he has chosen to remain silent? We think

not. The principle is the same. Certainly the effect would not be different. In either event the right of the accused is invaded.

We have held in *Wilson* v. *Commonwealth*, 157 Va. 962, 162 S. E. 15, and *Roller* v. *Commonwealth*, 161 Va. 1104, 172 S. E. 242, that under Code, section 6211, it was reversible error for the Commonwealth's Attorney, in the first case to call the wife as a witness upon the trial of the husband and in the second to comment upon the failure of the wife of an accused to testify. The principle applied in those cases applies here.

In *Counselman* v. *Hitchcock*, 142 U. S. 547, 12 S. Ct. 195, 35 L. Ed. 1110, the history of the Federal and State constitutional provisions and the statutes and decided cases from many jurisdictions are given.

The accused through his counsel had already exercised his choice and had remained silent. When the juror requested the court to have the accused testify he was placed in a position where if he had refused a very bad impression would likely have been created upon the minds of the jurors, who, after the request from one of their member, thereby had brought pointedly to their attention the fact that the accused had not testified. Obviously he would have been prejudiced by remaining off the witness stand and through no fault of his own. He, in effect, was forced to be deprived of the choice he had already made, and compelled to testify under circumstances which he had no part in bringing about. He certainly did not *voluntarily* take the witness stand and testify. He was deprived of a fundamental right, which most likely prejudiced his cause. He has not had accorded him the fair and impartial trial which the law of the land insures every person charged with crime.

The judgment is reversed and the case is remanded for a new trial.

*Reversed.*