## Richmond

MARTIN CARDWELL, JR. V. COMMONWEALTH OF VIRGINIA.

December 6, 1968.

Record No. 6847.

Present, All the Justices.

*Raleigh M. Cooley* for plaintiff in error.

*Charles Shepherd Cox, Jr., Assistant Attorney General (Robert Y. Button, Attorney General,* on brief), for defendant in error.

I'ANSON, J., delivered the opinion of the court.

Defendant, Martin Cardwell, Jr., was indicted for the theft of a 1966 Ford Mustang automobile in Kingsport, Tennessee, and bringing the stolen automobile into this State, in violation of § 19.1-220, Code of 1950, as amended, 1960 Repl. Vol. Defendant was tried and found guilty by a jury on July 6, 1966, and his punishment fixed at seven

years in the State penitentiary. He was sentenced in accordance with the jury's verdict and is here on a writ of error to the judgment.

Defendant contends that (1) the evidence is insufficient to support the conviction, and (2) the trial court erred in allowing a witness for the Commonwealth to testify in rebuttal as to an admission made by the defendant.

The evidence shows that on the night of January 21, 1966, the defendant, with Donnie Dickerson, who was jointly indicted with the defendant, and another young man whose name does not appear in the record, left Bristol, Virginia, in Dickerson's 1954 Chevrolet automobile and proceeded to a night club in Kingsport. Finding the club closed, they drove around in Kingsport, discussed stealing an automobile, and finally selected the Mustang belonging to Gary Hartgrove.

Dickerson, who had already pleaded guilty and been sentenced for the offense, testified that the stolen car was driven to Bristol by the third man with the defendant riding therein as a passenger. He followed them to Bristol in his Chevrolet. They stopped somewhere between Kingsport and Bristol and removed the license plates from the Mustang and placed the Chevrolet's front license plate on the rear of the stolen car. When they arrived in Bristol, Dickerson parked his car, got in the Mustang, and the three of them proceeded in the stolen car to a point south of Hillsville, Virginia, on Route 52, where the car was wrecked and abandoned.

Trooper McAlexander found the wrecked car on the afternoon of January 22, 1966, and after learning that Dickerson and the defendant were being held in the Carroll county jail on another felony charge he interrogated them on several different occasions concerning the theft of the Mustang.

Defendant testified that he went to Kingsport with Dickerson and the third party, but he did not remember much about what happened while they were there because he was drinking heavily. He saw Dickerson and the third man in the Mustang but thought it belonged to one of them. He drove Dickerson's car back to Bristol and parked it. Then he joined the other two in the Mustang. He first learned that the car was stolen about an hour after the wreck.

On cross-examination, defendant was asked if he took the license tag off of Dickerson's Chevrolet and put it on the Mustang. He replied that he did not remember anything about the tags. Defendant was then asked if he did not tell Trooper McAlexander, in answer to

a question as to why he took the tags off the Chevrolet and put them on the Mustang, "Well, it was better than having it with the real tags on it." Defendant replied that he did not "remember telling Mc-Alexander that or anything else."

McAlexander was recalled as a rebuttal witness and defendant objected "to any statement or any interview unless the Commonwealth can prove this man was advised of his rights, had counsel, and counsel was present at the time of the questioning." McAlexander testified that he told defendant before he was charged with the theft of the Mustang that he did not have to tell him anything; and that anything he said "may be used in evidence." He also told defendant that if he could not afford a lawyer the court would appoint one for him, but he did not recall when he told him that because he interrogated him on three different occasions. Defendant again objected to the recall of McAlexander as a witness for the purpose of attacking his credibility. The objection was overruled, and McAlexander testified: "About the third time I talked to him [defendant] I made the statement to him, 'Wasn't that a foolish thing to do, to put those tags off Mr. Dickerson's car on a stolen automobile?', his statement was, 'Well, that was better than keeping the right tags on it, wasn't it?' " At the time of this interrogation defendant had been charged with the theft of the Mustang.

■ We do not agree with defendant's first contention, that Dickerson's testimony was so vague and incredible that it was insufficient to support the conviction.

For evidence to be incredible it "must be either so manifestly false that reasonable men ought not to believe it, or it must be shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ." *Burke* v. *Scott,* 192 Va. 16, 23, 63 S. E. 2d 740, 744; *Simpson* v. *Commonwealth,* 199 Va. 549, 558, 100 S. E. 2d 701, 706, 707.

It is true that Dickerson was unable to recall the date of the offense, but his testimony in all other respects was clear and unequivocal. Moreover, defendant disputed only a portion of Dickerson's testimony, and he corroborated most of it. There was nothing so vague or incredible about Dickerson's evidence that reasonable men should not believe it. The jury was instructed that the testimony of an accomplice should be considered with great caution, and thus Dickerson's credibility as a witness was for the jury to determine.

■ Defendant contends that the alleged admission made by him to McAlexander was inadmissible because he was not advised prior to interrogation that he had the right to the presence of an attorney, either retained or appointed, pursuant to the mandate of *Miranda* v. *State of Arizona*, 384 U. S. 436, 86 S. Ct. 1602, 16 L. ed. 2d 694, 10 A. L. R. 3d 974 (1966).

*Miranda* requires, among other procedural safeguards, that prior to any interrogation of an accused he must be warned that he is entitled to the presence of an attorney, either retained or appointed, during questioning.[1]

It is perfectly manifest from the evidence here that McAlexander did not advise defendant at any time before interrogating him that he was entitled to the presence of an attorney, either retained or appointed, during questioning. Thus one of the procedural safeguards required by *Miranda* was not complied with.

In *Miranda* it was said (384 U. S. at 444, 86 S. Ct. at 1612): "Our holding * * * briefly stated * * * is this: the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of the procedural safeguards effective to secure the privilege against self-incrimination." The holding indicates that *Miranda* does not recognize any exception to the blanket prohibition against prosecutorial use of unconstitutionally obtained confessions or statements. Thus the conclusion is inescapable that any statement obtained violative of *Miranda* may not be used by the prosecution, even for the purpose of impeachment. See also, *United States* v. *Fox*, 403 F.2d 97 (2d Cir. 1968); *Proctor* v. *United States*, 404 F.2d 819 (D.C. Cir. 1968); *Commonwealth* v. *Padgett*, 428 Pa. 229, 237 A. 2d 209, 210 (1968); *Gaertner* v. *State*, 35 Wis. 2d 159, 150 N. W. 2d 370, 376, 377 (1967); Annot., Impeachment—Inadmissible Confession, 89 A.L.R. 2d 478.

The Commonwealth argues that even if the trial court erred in admitting defendant's statement in evidence, it was harmless and we should apply the doctrine of harmless error, which has found statutory and judicial acceptance in this and other States. Code § 8-487(8), 1957 Repl. Vol.;[2] *Elliott* v. *Commonwealth*, 172 Va. 595, 1 S. E. 2d

---

1. *Johnson* v. *New Jersey*, 384 U. S. 719, 721, 86 S. Ct. 1772, 1775, 16 L. ed. 2d 882 (1966), holds that *Miranda* governs cases in which the trial began after June 13, 1966.

2. § 8-487(8) provides that: "No judgment * * * shall be * * * reversed: * * * for any error committed on the trial when it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached."

273 (1939); *Commonwealth* v. *Padget, supra; Gaertner* v. *State, supra.*

We are here confronted with an error of constitutional proportions, and the question presented is whether the evidentiary use of defendant's statement can be tested by the harmless error standard of the recent case of *Chapman* v. *State of California,* 386 U. S. 18, 87 S. Ct. 824, 17 L. ed. 2d 705 (1967), or whether defendant's conviction must be reversed without any inquiry as to the impact of the error under the doctrine of automatic reversal.

In *Chapman* the Court recognized that some constitutional errors do not require automatic reversal,[3] but held "that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." The automatic reversal cases were classified as those involving "constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error," and gave as examples: admission of a coerced confession; denial of counsel at trial; and trial before a partial judge. 386 U. S. at 23, 24, 87 S. Ct. at 827, 828.

The Supreme Court of the United States has not yet ruled on the question of whether the doctrine of harmless error may be applied to a *Miranda* warning violation. Several State courts, however, have held that since *Escobedo* v. *Illinois,* 378 U. S. 478, 84 S. Ct. 1758, 12 L. ed. 2d 977 (1964); *United States* v. *Wade,* 388 U. S. 218, 87 S. Ct. 1926, 18 L. ed. 2d 1149 (1967); and *Miranda,* were not applied retroactively (*Johnson* v. *New Jersey, supra;* and *Stovall* v. *Denno,* 388 U. S. 293, 298, 87 S. Ct. 1967, 1970, 18 L. ed. 2d 1199 (1967)) for the reason that a violation may occur without necessarily affecting the fundamental fairness of the trial, the rule of harmless error may be utilized when any of the new procedural safeguards expressed in those cases are breached. See, *Guyette* v. *State,* 84 Nev. 160, 438 P. 2d 244, 248 (1968); *Commonwealth* v. *Padgett, supra,* 237 A. 2d at 211, 212. Cf., *People* v. *Powell,* 67 Cal. 2d 32, 59 Cal. Rptr. 817, 429 P. 2d 137, 148-152 (1967). Thus it has been held that a *Miranda* violation does not require automatic reversal.

Applying the *Chapman* test to the record in the present case, we are compelled to conclude that there is at least a reasonable possibility that the rebuttal evidence which was unconstitutionally obtained might have contributed to defendant's conviction. Although there is strong evidence of defendant's guilt, we cannot say that the error

---

3. See, *Walder* v. *United States,* 347 U. S. 62, 74 S. Ct. 354, 98 L. ed. 503 (1954), permitting admission of evidence obtained in an unconstitutional search, a fourth amendment violation, for the sole purpose of attacking defendant's credibility.

complained of was "harmless beyond a reasonable doubt." The Commonwealth's attorney's argument to the jury laid great stress on the evidence complained of as an important element in the establishment of defendant's guilt, and the forceful attack on his credibility could have sealed the case against the defendant. There is no reason for us to treat the rebuttal evidence as less crucial than the prosecutor, and presumably the jury, treated it.

For the reasons stated, the judgment is reversed and the case remanded for a new trial.

*Reversed and remanded.*

CARRICO, J., dissenting

As I understand the majority opinion, the judgment of conviction is reversed because, although the defendant was told by the state trooper prior to making the incriminating statement that if he could not afford a lawyer the court would appoint one for him, the warning was deficient under *Miranda* in that it did not pinpoint the fact that counsel could be present during questioning. I believe that to be too narrow a view of the evidence and too technical an application of *Miranda*. I think the defendant was sufficiently apprised of his right to counsel during questioning, and I would affirm his conviction.