COURT OF APPEALS OF VIRGINIA

Present: Judges Huff, Athey and White
Argued at Salem, Virginia

UNPUBLISHED

ERIC LEE TOMLIN

v.      Record No. 0265-22-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE CLIFFORD L. ATHEY
JANUARY 17, 2023

FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
F. Patrick Yeatts, Judge

Rebecca L. Wetzel (Wetzel Legal, PLLC, on brief), for appellant.

William K. Hamilton, Assistant Attorney General (Jason S. Miyares,
Attorney General; Michael Pflieger, Deputy Commonwealth's
Attorney, on brief), for appellee.

Eric Lee Tomlin ("Tomlin") was indicted for and, following a bench trial in the Circuit

Court of the City of Lynchburg ("trial court"), convicted of attempted malicious wounding,

maliciously discharging a firearm at an occupied building, use of a firearm during commission of a

felony, wearing body armor while committing a crime, and unlawfully discharging a firearm in the

City of Lynchburg. On appeal, Tomlin argues that the trial court erred by: (1) rejecting Tomlin's

claim of self-defense in finding him guilty beyond a reasonable doubt of attempted malicious

wounding, (2) rejecting Tomlin's claim of self-defense in finding him guilty beyond a reasonable

doubt of maliciously shooting at an occupied building, (3) rejecting Tomlin's claim of self-defense

in finding him guilty beyond a reasonable doubt of unlawfully discharging a firearm in the City of

Lynchburg, and (4) finding Tomlin guilty of using a firearm in the commission of a felony and

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

wearing body armor while committing a crime. Since we find no error, we affirm each of the convictions.

## I. Background

Under settled principles, we state the facts in the light most favorable to the Commonwealth, the prevailing party below. *Gerald v. Commonwealth*, 295 Va. 469, 472-73 (2018).

On July 25, 2020, Tomlin arrived outside a residence where Kenneth Slaughter ("Slaughter") and two women were planning to consume crack cocaine. Tomlin honked the horn of his Jeep, and Slaughter and two women stepped out of the front door to see who was honking the horn. As they walked out the door, Tomlin was standing in the middle of the street, wearing a bullet proof vest, holding a handgun, and yelling at Slaughter that he wanted money that Slaughter allegedly owed him. Tomlin then fired a single shot into the air, and as Slaughter and the women retreated back inside, they heard more shots as Tomlin fired at the residence. The women next fled out of the back door and called the Lynchburg police department while Slaughter remained in the home. When responding officers arrived, they found thirteen spent cartridge casings in the road in front of the residence. Lynchburg Police Officer Person also saw "bullet strikes" on the front of the residence and testified that it appeared that bullets had passed through the door and into the house.

Sometime later, Lynchburg Police Officer Bryant conducted a traffic stop during the early morning hours of the same date and identified Tomlin as the car's driver. Bryant noted that Tomlin was wearing a "green in color camouflage vest [] that was bulkier than normal and not normal for a person to be wearing while driving a vehicle." The officers seized a Glock handgun from Tomlin during the stop. The cartridge casings collected in front of the residence were later analyzed and connected to this handgun. Tomlin admitted his involvement in the shooting, but he claimed that Slaughter had fired at him first.

At trial, Tomlin testified that he acted in self-defense because Slaughter had fired upon him first. The trial court found Tomlin guilty of all charges. Tomlin appeals.

## II. ANALYSIS

### A. *Standard of Review*

"On review of the sufficiency of the evidence, 'the judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Ingram v. Commonwealth*, 74 Va. App. 59, 76 (2021) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "The question on appeal, is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Yoder v. Commonwealth*, 298 Va. 180, 182 (2019)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

### B. *The trial court did not err in discrediting the testimony of Tomlin and crediting the testimony of Slaughter.*

Assignments of error I through III all rely on the same facts and argument and are therefore treated together. Tomlin argues that the trial court erred in crediting Slaughter's testimony over Tomlin's conflicting testimony, thereby disbelieving Tomlin's self-defense claims. We disagree.

"The fact finder, who has the opportunity to see and hear the witnesses, has the sole responsibility to determine their credibility, the weight to be given their testimony, and the inferences to be drawn from proven facts." *Commonwealth v. McNeal*, 282 Va. 16, 22 (2011) (emphasis omitted) (quoting *Commonwealth v. Taylor*, 256 Va. 514, 518 (1998)). As the Supreme Court has stated, an appellate court, "knowing nothing of the evidence or of the witness, except as it appears on the paper, feels itself very incompetent to decide on the credibility of the testimony." *Id.* (quoting *Brown v. Commonwealth*, 29 Va. (2 Leigh) 832, 841

(1830)); *see also Smith v. Commonwealth*, 56 Va. App. 711, 718 (2010) (stating where credibility issues are resolved by a fact finder in favor of the Commonwealth, the findings "will not be disturbed on appeal unless plainly wrong").

### 1. The trial court did not err in crediting the testimony of Slaughter.

Tomlin claims that Slaughter's testimony was incredible and that the trial court erred by finding it credible. We disagree.

An appellate court will only disturb a trial court's credibility determination "on appeal if [it] finds that [the witness'] testimony was inherently incredible, or so contrary to human experience as to render it unworthy of belief." *Kelley v. Commonwealth*, 69 Va. App. 617, 626 (2019) (second alteration in original) (quoting *Johnson v. Commonwealth*, 58 Va. App. 303, 315 (2011)); *see also Johnson*, 58 Va. App. at 315; *Robertson v. Commonwealth*, 12 Va. App. 854, 858 (1991). "To be 'incredible,' testimony 'must be either so manifestly false that reasonable men ought not to believe it, or it must be shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Kelley*, 69 Va. App. at 626 (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)); *see also Cardwell v. Commonwealth*, 209 Va. 412, 414 (1968).[1]

Tomlin further contends that Slaughter's testimony is incredible because: (1) Slaughter is a convicted felon whose record includes crimes of moral turpitude, (2) he was expecting to receive bond consideration in exchange for cooperating with the Commonwealth in the trial, and (3) the accuracy of Slaughter's recollection was diminished because he was consuming crack cocaine. Although the Commonwealth raises compelling counterargument with respect to each

---

[1] Tomlin cites *Fisher v. Commonwealth*, 228 Va. 296 (1984), for the proposition that "this Court does have the authority to overturn the trial court's credibility determinations under certain circumstances." This is technically true, but those circumstances are narrow despite Tomlin's attempt to frame it broadly. The rule appellant cites to *Fisher* for is well established and much narrower than Tomlin's characterization.

of these allegations, this Court declines to engage in our own credibility analysis. Moreover, even if all these allegations are true, it does not change the fact that we defer to a trial court's credibility determination unless the testimony was inherently incredible or so contrary to human experience as to render it unworthy of belief. There is nothing inherently incredible or unbelievable about Slaughter's testimony; therefore, we will not disturb the trial court's credibility determination.

2. The trial court did not err in rejecting Tomlin's testimony and affirmative defense of self-defense.

Tomlin next argues that the trial court erred in rejecting his testimony and claim of self-defense. We disagree.

"Self-defense is an affirmative defense which the accused must prove by introducing sufficient evidence to raise a reasonable doubt about his guilt." *Hughes v. Commonwealth*, 39 Va. App. 448, 464 (2002) (quoting *Smith v. Commonwealth*, 17 Va. App. 68, 71 (1993)); *see also McGhee v. Commonwealth*, 219 Va. 560, 562 (1978). "Whether an accused proves circumstances sufficient to create a reasonable doubt that he acted in self-defense is a question of fact." *Hughes*, 39 Va. App. at 464 (quoting *Smith*, 17 Va. App. at 71); *see also Yarborough v. Commonwealth*, 217 Va. 971, 979 (1977). Also, a fact finder is "entitled to disbelieve the self-serving testimony of the accused and to conclude that [he wa]s lying to conceal his guilt." *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998); *see also Covil v. Commonwealth*, 268 Va. 692, 696 (2004) ("[A] fact-finder, having rejected a defendant's attempted explanation as untrue, may draw the reasonable inference that his explanation was made falsely in an effort to conceal his guilt.").

Tomlin argues that his testimony was unimpeached at trial, that there was no physical evidence to contradict his story, and that therefore the trial court impermissibly rejected his credible testimony. Again, the Commonwealth provides compelling arguments countering each

- 5 -

of these contentions, but we need not address them here. Tomlin's assertions, once again, invite us to engage in our own credibility analysis, which we again refuse to do. Here, our inquiry is limited to whether the trial court was plainly wrong. Because the trial court was entitled to disbelieve Tomlin's self-serving testimony and credit the conflicting testimony of Slaughter, and nothing in the record suggests that the trial court was plainly wrong or that no rational finder of fact could reach those decisions, we will not disturb the trial court's ruling.

C. *The trial court did not err in finding Tomlin guilty of using a firearm in the commission of a felony and wearing body armor while committing a crime.*

Finally, Tomlin argues that his convictions for using a firearm in commission of a felony and wearing body armor while committing a crime cannot stand if we find that the trial court erred in assignments of error I through III. Since we do not find that the trial court so erred, we need not further address this last assignment of error.

### III. CONCLUSION

Here, the trial court made a credibility determination in favor of Slaughter's version of events and against Tomlin's affirmative defense. The trial court had a full and complete opportunity to observe and evaluate the witnesses and to weigh their testimony. Since the testimony of Slaughter was not inherently incredible or so contrary to human experience as to render it unworthy of belief, the trial court was entitled to disbelieve Tomlin's self-serving testimony that he acted in self-defense in response to Slaughter first firing upon him. Nothing in the record suggests that a rational finder of fact could not reach this result, and therefore we refuse to disturb the judgment of the trial court. Since we find no error in assignments of error I, II, or III, we need not and do not reach assignment of error IV.

*Affirmed.*